Rickey REED, Plaintiff,

v.

STATE OF CONNECTICUT, DEPARTMENT OF TRANSPORTATION, and Margo S. Kilbon, in Her Official Capacity, Defendants.

No. CIV3:98CV00426(AVC).

United States District Court, D. Connecticut.

March 29, 2001.

Amy E. Johnson, LoRicco, Trotta & LoRicco, New Haven, CT, W. Martyn Philpot, Jr., Laura Lee A. Dorflinger, Marc L. Glenn, Law Offices of W. Martyn, Philpot, Jr., LLC, New Haven, CT, for Plaintiff.

Robert L. Marconi, Attorney General's Office, New Britain, CT, Anthony Alfonso Jannotta, Attorney General's Office, Hartford, CT, for Defendants.

### RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COVELLO, District Judge.

This is an action for damages and equitable relief alleging violations of the plaintiff's constitutional and statutory rights pursuant to 42 U.S.C. §§ 1981,[1] 1983,[2] and 2000e, *et seq.*[3] The plaintiff, Rickey Reed, alleges that the defendants, the State of Connecticut Department of Transportation (the "DOT") as his employer, and Margo S. Kilbon, as the DOT's director of equal opportunity assurance, did not promote him because of his race and subjected him to a hostile work environment in retaliation for Reed's complaints of discrimination.

The defendants filed earlier a motion to dismiss several of the plaintiff's causes of action, which motion was granted in part. The defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the remaining counts, arguing that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.

The issues presented are: 1) whether an employee can demonstrate an employer's proffered reasons for not promoting him are pretexts for discrimination where the employer is a state agency whose affirmative action plan did not receive necessary approval and where the employee's promotion would have satisfied a stated promotional goal; 2) whether an employee can show that genuine issues of material fact exist to preclude summary judgment when his employer does not promote him after he filed complaints against the employer; 3) whether a plaintiff who alleges he was subject to a hostile work environment because he did not receive notification of civil rights workshops and because his computer equipment was outdated, raises genuine issues of material fact; 4) whether a plaintiff can demonstrate discriminatory pretext when his supervisor decides not to promote him, even though such a promotion would meet a stated goal; and 5) whether a plaintiff can maintain a cause of action under 42 U.S.C. § 1983 concurrently with a Title VII cause of action.

The court concludes that: 1) an employee does not demonstrate that his employer's reasons for not promoting him are pretexts when the promotion of another candidate received the commission on human rights and opportunities' approval and did not violate any mandatory terms of an affirmative action plan; 2) an employee does not show that genuine issues of material fact exist with evidence that he filed complaints against his employer but was not promoted where the employer has offered legitimate, nondiscriminatory reasons for promoting someone else and the employee has not shown these reasons were pretexts; 3) an employee who alleges

---

1. 42 U.S.C. § 1981(a) provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens...."

2. 42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

3. 42 U.S.C. § 2000e provides a cause of action for "an unlawful employment practice," which includes discrimination on the basis of "race, color, religion, sex or national origin," as well as retaliation against any employee who opposes an allegedly discriminatory practice of his employer.

he was subject to a hostile work environment does not raise genuine issues of material fact when he alleges he did not receive notice of civil rights workshops and had to work on outdated computer equipment; 4) a plaintiff does not demonstrate discriminatory pretext where a supervisor does not promote the employee, even though the promotion would satisfy a stated goal of a compliance agreement; and 5) a plaintiff cannot maintain a cause of action under 42 U.S.C. § 1983 concurrently with a Title VII action where the complaint does not raise some other law as the source of the right allegedly violated.

## FACTS

Examination of the complaint, affidavits, pleadings, exhibits, supplemental materials and the Rule 9(c) statements of material fact accompanying the motions for summary judgment, and the responses thereto, disclose the following undisputed material facts:

Reed is an African–American male who began working for the DOT as an affirmative action officer on January 9, 1974. The office of equal opportunity assurance, where Reed worked, is divided into two units: the division of affirmative action and the division of contract compliance. In the early stages of his career, Reed co-led the division of contract compliance as a senior affirmative action officer. Reed helped to develop and implement the DOT's Title VI programs.

Throughout his employment during the 1980s, Reed received three written reprimands: one for exercising poor judgment in connection with a letter he wrote in 1983; one for approving a training position for his wife in 1983; and one for failing to meet a supervisor's deadline in 1987. On June 17, 1988, Reed entered into a stipulation with the DOT in connection with a memo he had written for his supervisor which showed poor judgment and he received a five-day suspension. In March of 1989 and September of 1990, the DOT counseled Reed for excessive absenteeism.

In 1993, the DOT had an opening for the director of the contract compliance unit. The director worked under the supervision of Margo S. Kilbon, the director of equal opportunity assurance. Kilbon is a white female and has been the director of equal opportunity assurance since 1992. Reed had previously applied for the director of contract compliance when the DOT created the position in 1986, but he was not selected. In 1993, Reed again applied for the position, took an examination and interviewed with Kilbon. Kilbon recommended three candidates for the position to DOT deputy commissioner James Gaston, an African–American male. Kilbon's first choice for the position was Cynthia Cooper, an African–American female; her second choice for the position was Jerry Vaikus, a white female; and her third choice was Reed. Gaston interviewed the three recommended candidates and selected Cooper, who the DOT thereafter hired as the director of contract compliance.

In response to Cooper's hiring, Reed filed a complaint with the commission on human rights and opportunities ("CHRO") in April of 1993, alleging that the DOT was "perpetually denying qualified black males promotions to the classified positions of the EEOC category of Official/Administration." The CHRO dismissed Reed's complaint upon a finding that no reasonable cause existed on the merits.

As director of contract compliance, Cooper was Reed's supervisor, along with Kilbon. In their supervisory roles, Cooper and Kilbon prepared evaluations of Reed's performance, including an evaluation for the time period from October 2, 1992 through June 30, 1993. On that evaluation, Reed received a "needs improve-

ment" rating for his interpersonal relationships with his supervisors and peers. Along with the two "needs improvement" ratings, Reed received four "excellent" ratings, four "fully successful" ratings and an annual composite rating of "fully successful." The evaluation noted that, "Mr. Reed has excellent knowledge of duties [and] is very thorough and organized. His interpersonal skills however, need improvement as it relates externelly [sic]." On December 6, 1994, the DOT conducted a fact-finding meeting regarding Reed's alleged insubordination to Cooper. On April 11, 1995, as a result of that meeting, Kilbon issued a written counseling to Reed for his uncooperative behavior and poor judgment related to Cooper's instructions regarding computer software and new office procedures.

In January of 1995, Reed left the contract compliance unit and became a senior affirmative action officer in the contract administration unit.

On October 11, 1996, Cooper resigned from her position as director of the contract compliance unit. In November 1996, the application process to fill the director position began, with six candidates, including Reed, applying for the position. At the time of his application, Reed had sixteen years experience in contract compliance and six years experience in contract administration. Reed interviewed with Kilbon for the position. Kilbon thereafter stated that Reed's interview was "terrible." Kilbon selected another candidate, Thomas DiCioccio, a white male, for the position. DiCioccio had less education than Reed, but had nineteen years experience in contract compliance. DiCioccio was one of two employees who was left in charge as the acting director of the contract compliance unit when Cooper was absent. Kilbon stated that DiCioccio had an "excellent" interview. In addition, Kilbon testified that DiCioccio had experience running two small businesses and had current supervisory experience.[4] DiCioccio had previously received a merit excellence service rating and a bonus from the DOT for his work in contract compliance.

In May of 1996, the DOT submitted its proposed affirmative action plan to the CHRO for approval, which the CHRO did not approve. The CHRO had previously issued a certificate of noncompliance to the DOT relating to past proposed affirmative action plans. On January 9, 1997, the CHRO withdrew the certificate of noncompliance, when it agreed with the DOT to enter into a compliance agreement concerning the DOT's procedures. As part of the compliance agreement, the DOT had certain hiring and promoting goals. DiCioccio's promotion did not meet any stated goals under the compliance agreement and required CHRO approval. On January 31, 1997, the CHRO interim director, Patricia Jackson, verbally approved DiCioccio's promotion and the DOT appointed DiCioccio. If Kilbon had promoted Reed, rather than DiCioccio, the promotion would have fulfilled one of the compliance agreement's promoting goals.

On June 25, 1997, Reed filed a complaint with the CHRO, alleging that the DOT had discriminated against him based upon his race and gender because it had promoted DiCioccio instead of him. After its investigation, the CHRO dismissed Reed's complaint.

On March 6, 1998, Reed commenced this action. On October 6, 1999, the defendants moved to dismiss Reed's 42 U.S.C. §§ 1981 and 1983 causes of action in their entirety, and the portion of the plaintiff's

---

4. Reed stated that he, like DiCioccio, also had small business experience, but stated that he did not discuss this information with Kilbon during his 1997 interview.

Title VII cause of action seeking individual recovery against Kilbon. On April 5, 2000, the court, Arterton, J., granted the defendants' motion as to the §§ 1981 and 1983 causes of action against the DOT and the defendants' motion as to the Title VII cause of action against Kilbon. The court denied the defendants' motion as to the plaintiff's §§ 1981 and 1983 causes of action for equitable relief as to Kilbon in her official capacity. Thus, four causes of action remain: Count I (42 U.S.C. § 1981), Count II (42 U.S.C. § 1983) against Kilbon in her official capacity for equitable relief, Count III (Title VII-race discrimination) and Count IV (Title VII-retaliation) against the DOT.

## STANDARD

On a motion for summary judgment, the moving party must show that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991).

In opposing a motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of [its] pleading," but must "set forth specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56; *see D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir.1998). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56. "[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." *Zigmund v. Foster,* 106 F.Supp.2d 352, 356 (D.Conn.2000) (citations and quotation marks omitted). Furthermore, "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to avoid the entry of judgment against the non-moving party]; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) lays out the burden of production and order of proof analysis for Title VII causes of action and 42 U.S.C. § 1981 causes of action. *See Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (applying *McDonnell Douglas* test to Title VII cause of action based upon race discrimination); *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996) (applying *McDonnell Douglas* test to Title VII cause of action based upon retaliation); *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (applying *McDonnell Douglas* test to cause of action based upon 42 U.S.C. § 1981). First, the plaintiff has the initial burden of "establishing a prima facie case of racial discrimination [or retaliation]." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. This requirement is not an

onerous one, and the plaintiff need only show by a preponderance of the evidence that he "applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. "The burden then must shift to the employer to articulate some legitimate, non-discriminatory reason [for the adverse employment decision]." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The defendant is not required to convince the court that the reason it offers is true, but rather "[i]t is sufficient if the defendant's evidence raised a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. Although the burden of production falls upon the defendant at this second stage, "the ultimate burden of persuasion remains always with the plaintiff." *Bickerstaff v. Vassar Coll*, 196 F.3d 435, 446 (2d Cir.1999).

"If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff must then show "that the proffered reason was not the true reason for the employment decision' and that race was." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). The plaintiff may meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. This burden merges with the plaintiff's "ultimate burden to persuade the trier of fact that [he] has been the victim of intentional

discrimination (i.e., that an illegal discriminatory reason plated a motivating role in the adverse employment decision.)" *Bickerstaff v. Vassar Coll*, 196 F.3d 435, 446–47 (2d Cir.1999).

## DISCUSSION

### I. Title VII Causes of Action

#### A. Race Discrimination

Count III of the complaint alleges that the defendant DOT violated Title VII by discriminating against Reed because of his race. The DOT argues that this cause of action fails, as a matter of law, because "[t]he facts concerning DiCioccio's promotion explain the plaintiff's non-promotion and show DOT's . . . lack of intentional discrimination." In response, Reed states that he "refutes such non-discriminatory reasons as pretextual."

■ "[S]ummary judgment is ordinarily not appropriate," in Title VII causes of action because "a defendant's intent and state of mind are placed in issue . . . ." *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991). "The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). To defeat a motion for summary judgment, "the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for [the employment decision] is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Davidson v. Time, Inc.*, 972 F.Supp. 148, 152 (E.D.N.Y.1997).

■ Applying the *McDonnell Douglas* test, Reed has stated a prima facie case

with respect to his nonpromotion, a fact that the defendants do not vigorously dispute. In turn, the DOT has proffered legitimate, nondiscriminatory reasons why Reed was not promoted to the director position. Kilbon stated that the person appointed instead of Reed, DiCioccio, had more experience in contract compliance than Reed, had current supervisory experience and had an excellent interview.[5]

The burden now shifts to Reed to demonstrate that the DOT's proffered reasons are pretexts for discrimination. Reed does not dispute that DiCioccio had more years experience in contract compliance than him or that DiCioccio had current supervisory experience that he did not possess.[6] In fact, Reed admits these facts in his Rule 9(c)(2) statement. Moreover, Reed does not dispute that his own interview for the director position was "terri-ble," while DiCioccio's interview was "excellent." Instead, Reed argues: "[s]ince 1994, the DOT's statutorily mandated Affirmative Action Plans have failed to receive approval from the [CHRO] for a variety of reasons, including hiring and promotion practices ... Moreover, in 1997 there were stated promotion goals for African American males ... As such, Reed has refuted the DOT's legitimate reasons for failing to promote him."

While an employer's noncompliance with its own affirmative action plan may be probative of discriminatory intent,[7] this is not the case as DOT was in compliance at the time of the incident here. On January 9, 1997, the compliance agreement between the DOT and the CHRO took effect. On January 31, 1997, the DOT promoted DiCioccio, having first obtained the CHRO's specific approval for the promotion. Thus,

---

**5.** Specifically, Kilbon testified:
[P]art of the reason [that DiCioccio was selected] was that he had an excellent interview. During the three years he had also worked for Mrs. Cooper she had left him as acting director when she was absent, along with one of the other staff members at some point too. He had very good knowledge of the programs and he had supervisory, current supervisory activities that he did at that point, and he also had run his own private business and since this particular program deals with a lot of small businesses that was also an area of expertise he would bring.
In addition, Kilbon testified that DiCioccio had less education than Reed, but felt the difference in education levels was not significant in light of DiCioccio's experience at the DOT. As another factor, Kilbon testified that DiCioccio "actually received a merit excellence service rating and got a bonus for his work during that time." Kilbon testified that Reed "did not have as much experience in that particular unit as Mr. DiCioccio. He didn't have as current supervisory experience as Mr. DiCioccio. He had a terrible interview." Kilbon also testified that Reed's problem with Cooper in 1993 was one of the considerations in her decision.

**6.** In his complaint, the plaintiff asserts that he was DiCioccio's supervisor for seven years, but the plaintiff has offered no evidence to support this statement. DiCioccio testified that when he first came to the DOT, he was trained by Reed, but went on to say, "I don't know if I want to say [Reed] was my supervisor, but I will say [Reed] was the lead." The plaintiff does not dispute that in 1997, he had sixteen years of experience in the contract compliance unit, whereas DiCioccio had nineteen years experience.

**7.** *See, e.g., Craik v. Minnesota State Univ. Bd.,* 731 F.2d 465, 472 (8th Cir.1984) ("[E]vidence that an employer failed to live up to an affirmative-action plan is relevant to the question of discriminatory intent."); *Chang v. Univ. of Rhode Island,* 606 F.Supp. 1161, 1183 (D.R.I. 1985) (Failure to adopt or effectively administer an affirmative action plan "may be probative of discriminatory intent."); *but see Liao v. Tennessee Valley Auth.,* 867 F.2d 1366, 1369 (11th Cir.1989) ("[T]he failure to give a preference under such a plan cannot be sued to support an allegation of discrimination in employment decisions.").

Reed's claims with respect to the DOT's prior noncompliance are simply inapplicable to the events which he claims constitute the Title VII violation.

In addition, Reed argues that the DOT's proffered reasons are pretextual because Reed's promotion to the director position "would have furthered the stated promotion goals for African American males," that were part of the DOT–CHRO compliance agreement. This assertion focuses not on the *reason* for the DOT's decision to not promote Reed, but rather on the *effect* that decision had with respect to the DOT's promotion goals. The undisputed reasons for not promoting Reed were his inferior qualifications and his poor interview. The effect of not promoting Reed was that the DOT fell short of the compliance agreement's goals. Reed's burden, however, is to show that race played a role in the DOT's decision. Articulating the effect that the DOT's decision had on their internal goals does call into question the DOT's legitimate, nondiscriminatory *reasons* for that decision. Title VII "does not require the employer to restructure his employment practices to maximize the number of minorities and women hired," *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 259, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), but allows the employer discretion to chose among qualified candidates "provided that the decision is not based upon unlawful criteria." *Id.*

Finally, Reed argues that the record supports "that DOT has engaged in systematic disparate treatment," but offers no evidence in support of this conclusion "[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations." *Bickerstaff v. Vassar Coll,* 196 F.3d 435, 451 (2d Cir.1999) (quoting *Schwapp v. Town of Avon,* 118 F.3d 106, 111 (2d Cir.1997)). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff,* 196 F.3d at 452. Reed has pointed to nothing in the record, other than his own conclusory allegations, that the DOT has engaged in systematic discrimination.

Based on the foregoing, the court concludes that Reed has failed to show sufficient evidence to rebut the DOT's proffered reasons for not promoting him as pretextual or motivated by a discriminatory purpose. Accordingly, Reed's Title VII cause of action based upon race fails as a matter of law.

### B. *Retaliation*

Count IV of the complaint alleges that the DOT retaliated against Reed for his filing of CHRO complaints in 1993 and 1997. Specifically, Reed alleges that Kilbon's decision in 1997 to promote DiCioccio rather than Reed was motivated in part by Reed's 1993 CHRO complaint, and that after Reed's 1997 CHRO complaint, the DOT subjected him to a hostile work environment.

### 1. *Failure to Promote*

The DOT first argues that Reed's Title VII cause of action based upon retaliation fails because Reed has not stated a prima facie case with respect to the DOT's decision not to promote him Specifically, the DOT argues that "[t]here is no causal connection between the protected activity (*i.e.,* filing a CHRO complaint) and DOT's promotion to the Director position." The DOT argues that, even if Reed has established a prima facie case, it has met its burden of offering a legitimate, nondiscriminatory reasons for its decision and "[a]ny claim of pretext is contrary to the evidence, as DOT made an employment

decision to promote the best candidate to the Director position."

Reed argues that "[i]n light of Reed's documented noteworthy performance, defendant's reliance on a 'marred' employment history as rebuttal of Reed's retaliation claim is pretext."

■ Title VII of the Civil Rights Act of 1962, 42 U.S.C. § 2000e–3, prohibits employers from taking adverse action against employees who have opposed a discriminatory employment practice. The section states, in relevant part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). "Title VII is violated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause ... [and] even if there were objectively valid grounds for the [decisions]." *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990)(internal citations omitted).

■ To state a prima facie case under the *McDonnell Douglas* test, the plaintiff must show "that the employee was engaged in protected activity; that the employer was aware of that activity; that the employee suffered adverse employment decisions; and that there was a causal connection between the protected activity and the adverse employment action." *Manoharan v. Colombia Univ. Coll. of Physicians & Surgeon,*s 842 F.2d 590, 593 (2d

Cir.1988). Here, Reed has shown that he was engaged in a protected activity when he filed complaints with the CHRO that alleged discrimination at the DOT.[8] Further, Kilbon testified that she was aware of Reed's activities.

■ With respect to the fourth element of the prima facie case, an employee may demonstrate proof of a causal connection between the protected activity and the employment decision *"indirectly* by showing that the protected activity was followed *closely* by discriminatory treatment, or through evidence such as disparate treatment of fellow employees engaged in similar conduct, ...,or *directly* through evidence of retaliatory animus directed against a plaintiff by the defendant." *De-Cintio v. Westchester County Med. Ctr,* 821 F.2d 111, 115 (2d Cir.1987) (internal citations omitted) (emphasis added). Some courts have held that a substantial time lapse between an employee's protected activity and the adverse employment action is counter-evidence of any causal connection between the two for purposes of a retaliatory action. *See, e.g., Johnson v. University of Wisconsin–Eau Claire,* 70 F.3d 469, 480 (7th Cir.1995) (concluding that twenty month gap between the protected activity and adverse employment decision discounted evidence of causal connection).

■ Reed does not satisfy his prima facie burden because he has failed to show a causal link between his CHRO filing in April 1993 with the DOT's decision not to promote him in January 1997. *Cf. Hollander v. American Cyanamid Co.,* 895 F.2d 80, 84–85 (2d Cir.1990) (affirming summary judgment for employer based on lack of causal connection where three months separated complaint and adverse

---

**8.** C.G.S. § 46a–82 expressly permits any person aggrieved by an alleged discriminatory practice to file a complaint in writing with the CHRO.

action). Moreover, Reed has not shown "disparate treatment of fellow employees engaged in similar conduct," or "evidence of retaliatory animus directed against [him] by the [DOT]." *See DeCintio,* 821 F.2d at 115.

 Assuming *arguendo* that Reed has stated a prima facie case, the DOT has offered a legitimate, nondiscriminatory explanation for its decision. The DOT states "DiCioccio was the more qualified candidate," and that Reed was "disruptive after Cooper's hire in 1993 ... insubordinate and uncooperative and was disciplined as a result." Reed has not adduced any evidence to rebut that DiCioccio had an excellent interview, had more experience than Reed in contract compliance and had current supervisory experience. Reed disputes the DOT's characterization of his employment history as "marred," and cites to positive comments he received in evaluations. Reed, however, does not dispute that he received a written reprimand from Kilbon on April 11, 1995, or that he received a "needs improvement" rating for his interpersonal skills. "[A]n employees's opinion about his own qualifications does not suffice to give rise to an issue of fact about whether he was discriminated against, and that is particularly true where the employer's decision whether to promote plaintiff did not depend on whether he was qualified, but whether he was the best candidate for the job." *Hines v. Hillside Children's Ctr.,* 73 F.Supp.2d 308, 320 (W.D.N.Y.1999) (quoting *Layaou v. Xerox Corp.,* 999 F.Supp. 426, 433 (W.D.N.Y. 1998)). "Title VII may not be used as a vehicle for second-guessing an employer's business judgment...." *Davidson v. Time, Inc.,* 972 F.Supp. 148, 153 (E.D.N.Y. 1997).

Based on the foregoing, the court concludes that Reed's Title VII cause of action based upon retaliation fails as a matter of law.

### 2. *Hostile Work Environment*

 Reed next argues that the DOT subjected him to a hostile work environment after he filed a complaint with the CHRO in June of 1997. Specifically, Reed testified that he was not notified of civil rights workshops sponsored annually by the U.S. Department of Transportation, even after requesting that he be. In addition, Reed testified, "I must be the only individual of the entire 3400 or whatever whose computer equipment is not Y2K compliant. Everything is antique and it's been that way and I feel that's part of the retaliation that I am going through as a result of being active fighting discrimination."

 Under Title VII, workplace harassment in retaliation for an employee's protected activities "is actionable when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir.1998) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Reed has only testified regarding the workshop notification and his computer equipment. The court concludes that these two assertions do not rise to the level of "discriminatory intimidation, ridicule, and insult," that would lead a reasonable person to conclude that Reed has been subjected to an "abusive work environment."

Based on the foregoing, the court concludes that Reed has failed to adduce evidence showing that the DOT retaliated against him in response to his filing complaints with the CHRO or subjected him to

a hostile work environment. Accordingly, the Title VII cause of action fails as a matter of law.

## II. § 1981 Cause of Action

Count I of the complaint alleges that Kilbon's failure to promote Reed violated his rights under 42 U.S.C. § 1981. Reed brings this cause of action against Kilbon in her official capacity for equitable relief.

Kilbon argues that summary judgment is appropriate because Reed's "general allegations of discrimination fail to articulate with sufficient particularity how she violated [§ 1981]." In response, Reed argues that there is "ample evidence to refute the defendant's nondiscriminatory reasons as pretext."

Reed's cause of action under § 1981 is based on the same facts as his Title VII cause of action for discrimination discussed above. Because the same *McDonnell Douglas* framework used to analyze Title VII causes of action applies to § 1981 causes of action*Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), Reed's cause of action under § 1981 also fails as a matter of law. *See Bickerstaff v. Vassar Coll,* 99, F.Supp. 372, 377 (S.D.N.Y.1998) *aff'd,* 196 F.3d 435 (2d Cir.1999) ("[T]he same analysis which leads to dismissal of the Title VII claim would seem to justify dismissal of this [§ 1981] claim."); *see also Griffin v. Ambika Corp.,* 103 F.Supp.2d 297, 315 (S.D.N.Y.2000) ("[P]laintiffs' claims under § 1981 are dismissed because, just as they have failed to create a triable issue of fact with respect to their Title VII claims, so have they failed to do with respect to their § 1981 claims.").

## III. § 1983 Cause of Action

Count II of the complaint alleges that Kilbon, in her official capacity, violated § 1983 by discriminating against him because of his race while acting under color of state law. Kilbon argues that "[n]owhere in Count II of the plaintiff's complaint does he allege that a constitutional right was infringed.". In his memorandum of law in support of his opposition to summary judgment, Reed states that his § 1983 cause of action, "as it now stands clearly is founded upon Title VII and § 1981...."

 42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred...." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). To state a cause of action under § 1983, "[f]irst, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). A plaintiff can only concurrently assert a Title VII cause of action with a § 1983 cause of action, "if some law other than Title VII is the source of the right alleged to have been denied." *Saulpaugh v. Monroe Cmty. Hosp.,* 4 F.3d 134, 143 (2d Cir.1993); *see also Gierlinger v. New York State Police,* 15 F.3d 32, 34 (2d Cir.1994) ("A Title VII plaintiff is not precluded from bringing a concurrent § 1983 cause of action, so long as the § 1983 cause of action is based on a distinct violation of a constitutional right.").

To the extent that Reed's § 1983 cause action is based on alleged violation of § 1981, the court has already examined the substance of Reed's § 1981 cause of action above, and has concluded that Kilbon is entitled to judgment as a matter of law. To the extent that Reed's § 1983 cause of action is based on alleged violations of Title VII, the cause of action also fails because "a plaintiff can assert a claim

under Section 1983 if *some law other than Title VII* is the source of the right alleged to have been denied." *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (emphasis added). Accordingly, Reed's § 1983 cause of action fails as a matter of law.

## CONCLUSION

For the reasons stated herein, the defendants' motion for summary judgment (document no. 64) is GRANTED.